CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED for Big Stone Gap

FEB 06 2012

JULIA C. DUDLEY, CLERK
BY: /s/ DMoo
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| ROCKY L. BAKER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:11CV00037 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| RON MCCALL, et al., | ) By: Hon. Glen E. Conrad |
| | ) Chief United States District Judge |
| Defendants. | ) |

This case is presently before the court on the defendants' motion to dismiss the plaintiff's first amended complaint and the plaintiff's motion for leave to file a second amended complaint. For the reasons set forth below, the defendants' motion will be granted and the plaintiff's motion will be dismissed as moot.

## Background

The following summary of the facts, which is taken from the plaintiff's first amended complaint, is accepted as true for purposes of the defendants' motions to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

The plaintiff, Rocky L. Baker, was employed by the Norton City Schools for seven years. He worked as an assistant principal from 2004 to July of 2009, when he obtained the position of principal at John I. Burton High School. Baker served in that position until November 1, 2010, when he was assigned to the Central Office as Assistant to the Superintendent. Baker remained in that position until June 30, 2011, when his contract was not renewed and he was effectively terminated. During the three years preceding his termination, Baker also served as Director of Transportation, Gifted and Talented Coordinator, Title III Coordinator, and GEAR UP Coordinator, in addition to his other positions. At the time of his termination, defendants Ron

McCall, Tim Cassell, Willie Mae Harris, Steve McElroy, and Steve Childers were members of the Norton City School Board, and defendant Jeff Comer was the Superintendent of the Norton City Schools.[1]

On or about September 30, 2010, Baker advised Comer that he intended to marry Catherine Phillips, a "subordinate employee." (1st Am. Compl. at ¶ 13). In response, Comer presented Baker with a copy of School Board Policy GCCB – Employment of Family Members ("the Policy"), and advised Baker that the Policy "would prohibit [Baker] from marrying Phillips."[2] (Id. at ¶ 14).

Subsequent to the meeting, Baker informed Comer that he and Phillips had decided not to marry, because they wanted Baker to be able to keep his principal position. Baker alleges that, despite the couple's decision, "the School Board demoted and reassigned [Baker] to the Central Office, eliminating his title as principal and replacing it with [the] title of Assistant to the Superintendent." (Id. at ¶ 16). According to Baker, the asserted justification for the change was the fact that he had voiced his desire to marry a subordinate employee.

---

[1] Defendants Harris and Childers were misnamed by the plaintiff.

[2] The defendants submitted a copy of the Policy with their motion to dismiss. The Policy provides, in pertinent part, as follows:

> No family member of any employee may be employed by the School Board if the family member is to be employed in a direct supervisory and/or administrative relationship either supervisory or subordinate to the employee. The employment and assignment of family members in the same organizational unit shall be discouraged.
>
> Family members are defined as father, mother, brother, sister, spouse, son, daughter, son-in-law, daughter-in-law, sister-in-law or brother-in-law.

(Defendants' Ex. 1).

Following his reassignment to the Central Office in November of 2010, Baker inquired as to whether it would be a violation of the Policy for him to marry Phillips, since he was no longer her supervisor. Baker alleges that Comer advised him that there would be no violation and, thus, that the marriage would not affect his employment.

At some point thereafter, Baker married Phillips. Although the marriage did not violate the Policy, the defendants declined to renew his employment contract for the 2011-2012 school year.

Baker filed the instant action on August 16, 2011. In his first amended complaint, Baker asserts the following claims under 42 U.S.C. § 1983: "deprivation of property rights" (Count I); "deprivation of liberty rights" (Count II); and "deprivation of plaintiff's right to free speech" (Count III). Additionally, in Count IV, Baker asserts a supplemental state law claim of defamation against defendant Harris.

## Discussion

### I. Motion to Dismiss

The defendants have moved to dismiss Baker's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). When reviewing a claim under Rule 12(b)(6), the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Id. at 244. Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [his] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." Id.

While extrinsic evidence must generally not be considered at the Rule 12(b)(6) stage, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) (citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)). In this case, the defendants submitted a copy of the school system's written policy on the employment of family members with their motion to dismiss. Because Baker specifically refers to the Policy in his complaint and does not dispute the exhibit's authenticity, the court may properly consider the Policy without converting the motion to dismiss to one for summary judgment. Id.; see also Sewraz v. First Liberty Ins. Corp., No. 3:10CV120, 2012 U.S. Dist. LEXIS 92, at *7-8 n.2 (E.D. Va. Jan. 3, 2012) (noting that the court could properly consider the policy submitted with the defendant's motion to dismiss, since it was authentic and integral to the plaintiff's complaint).

### A. Claims under § 1983

In his first amended complaint, Baker asserts a number of claims under 42 U.S.C. § 1983, which imposes civil liability on any person acting under color of state law to deprive another person of rights and privileges secured by the Constitution and laws of the United States. Specifically, Baker alleges that he was deprived of protected property and liberty interests in violation of the due process clause of the Fourteenth Amendment, and that the defendants retaliated against him for exercising his First Amendment right to free speech.

1.  **Due Process Claims**

The Fourteenth Amendment to the United States Constitution provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. The Fourteenth Amendment's due process clause contains both procedural and substantive components. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause . . . ." Mathews v. Eldridge, 424 U.S. 319, 332 (1976). This component requires the government to provide certain procedural protections whenever it deprives a person of interests that the person has acquired in certain benefits. Bd. of Regents v. Roth, 408 U.S. 564, 576 (1972). In contrast, the substantive due process component "bar[s] certain governmental actions regardless of the fairness of the procedures used to implement them." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998) (internal quotation marks omitted). It "provides heightened protection against government interference with certain fundamental rights and liberty interests." Troxel v. Granville, 530 U.S. 57, 65 (2000) (internal quotation marks omitted). In this case, Baker's claims, while not specifically labeled as such, assert violations of his procedural and substantive due process rights.

   a.  **Deprivation of Property**

In Count I of his first amended complaint, Baker alleges that he had a constitutionally protected property interest in his continued employment with the Norton City Schools, and that the defendants deprived him of that interest by not renewing his employment contract. To support this claim, Baker contends that he possessed a legitimate entitlement to continued employment, because he "had obtained continuing contract status due to his three years as

Director of Transportation with Norton, in which position he served as a supervisor." (1st Am. Compl. at ¶ 12).

To the extent Baker attempts to state a procedural due process claim relating to the termination of his employment, the court concludes that his allegations are insufficient to withstand the defendants' motion to dismiss. While the parties disagree as to whether Baker had achieved continuing contract status by virtue of serving as the Director of Transportation for three years prior to his termination,[3] the court need not decide this issue to dispose of his procedural due process claim. Even assuming that Baker had a protected property interest in continued employment, and that he was deprived of that interest as a result of his termination, a procedural due process violation "is not complete unless and until the State fails to provide due process." Zinermon v. Burch, 494 U.S. 113, 116 (1990). Thus, to prevail on a procedural due process claim, "a plaintiff must have taken advantage of the processes that are available to him . . . , unless those processes are unavailable or patently inadequate." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000); see also Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection[s] available and the plaintiff has simply refused to avail himself of them.").

In this case, Baker's first amended complaint is devoid of any allegations of procedural deficiencies related to his termination. Baker does not allege that he utilized the process

---

[3] For the purposes of procedural due process, property interests are not defined by the Constitution, but instead stem from an independent source such as state law. Roth, 408 U.S. at 577. Under Virginia law, a public school administrator has a protected property right in his employment once he obtains continuing contract status. Hibbitts v. Buchanan Sch. Bd., 433 F. App'x 203, 206 (4th Cir. 2011) (citing Wooten v. Clifton Forge Sch. Bd., 655 F.2d 552, 554-55 (4th Cir. 1981)). A "supervisor" may achieve continuing contract status when certain requirements are met. See Va. Code § 22.1-294; 8 Va. Admin. Code § 20-440-10.

6

available for challenging his termination or that such process was constitutionally inadequate.[4] Because "the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants," his procedural due process claim must be dismissed. Alvin, 227 F.3d at 116.

To the extent Baker also intends to assert a substantive due process claim arising from the deprivation of his alleged property interest in continued employment with the Norton City Schools, such claim must likewise be dismissed. "Unlike rights subject to procedural due process protection, which arise from sources other than the Constitution, substantive due process rights arise solely from the Constitution." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1142 n. 10 (4th Cir. 1990). Because Baker's right to continued public employment, if any, was a right created by state law, it does not implicate substantive due process. See id. (noting that the plaintiff's entitlement to a position, "if it exists, is essentially a state law contract right, not a fundamental interest embodied in the Constitution"); see also Nicholas v. Penn. State Univ., 227 F.3d 133, 142 (3d Cir. 2000) (joining the "great majority of courts of appeals" which have held that "public employment is [not] a fundamental property interest entitled to substantive due process protection"). Accordingly, Count I of the first amended complaint must be dismissed.

### b. Deprivation of Liberty

In Count II, Baker asserts that he was deprived of liberty interests protected by the Fourteenth Amendment. Specifically, Baker contends the defendants violated his "liberty right[] to marry" by enforcing the school system's policy on the employment of family members, and

---

[4] Indeed, Baker's counsel acknowledged during the hearing on the instant motions that Baker did not avail himself of the applicable grievance procedure.

that they "further deprived [him] of his liberty right to engage in the profession of [his] choosing," specifically that of "principal." (1st Am. Compl. at ¶¶ 30-31). For the reasons that follow, the court concludes that Count II is also subject to dismissal.

### i. Right to Marry

It is well settled that the Constitution embraces a fundamental right to marry. See Waters v. Gaston Cnty., 57 F.3d 422, 425 (4th Cir. 1995) (citing Loving v. Va., 388 U.S. 1, 12 (1967)). The United States Supreme Court has recognized, however, that this right is not without limitation. In Zablocki v. Redhail, 434 U.S. 374 (1978), the Supreme Court held that "not every restriction on the right to marry violate[s] the Constitution; rather 'reasonable regulations that do not significantly interfere with decisions to enter into the marital relationship may be legitimately imposed.'" Waters, 57 F.3d at 425 (quoting Zablocki, 434 U.S. at 386-87). Therefore, strict scrutiny applies "only to regulations that 'significantly interfere' with the right to marry." Id. (quoting Zablocki, 434 U.S. at 388). If a policy or regulation does not interfere "directly and substantially with the fundamental right to marriage," the court must "facially review the [p]olicy to determine whether there was a rational basis for its passage." Id. at 426.

In Waters, the United States Court of Appeals for the Fourth Circuit was tasked with reviewing a policy that prohibited spouses from working within the same department and/or supervising each other. Id. at 424. Noting that the policy was a "work-related restriction" with merely "incidental effects" on marriage, the Fourth Circuit held that the policy did "not directly and substantially interfere with [the] right [to marry] by preventing those who wish to marry from doing so." Id. at 426 (internal quotation marks omitted). "At most," the Court emphasized, the policy was "an unwelcome hurdle, forcing one spouse to attempt to transfer to another

department within the County or to leave the County's employ altogether." Id. Consequently, the Court held that the policy did not sufficiently impact a fundamental right so as to require strict scrutiny analysis. Id.

In ruling as it did in Waters, the Fourth Circuit was not in the minority on this issue. As the United States Court of Appeals for the Sixth Circuit previously noted, "[v]irtually every court to have confronted a challenge to an anti-nepotism policy on First Amendment, substantive due process, equal protection, or other grounds has applied rational basis scrutiny." Montgomery v. Carr, 101 F.3d 1117, 1126 (6th Cir. 1996). For instance, in Parks v. City of Warner Robins, 43 609, 614 (11th Cir. 1996), one of several decisions that the Fourth Circuit found persuasive in Waters, the United States Court of Appeals for the Eleventh Circuit held as follows:

> We conclude that the Warner Robins anti-nepotism policy does not directly and substantially interfere with the right to marry. The policy does not create a direct legal obstacle that would prevent absolutely a class of people from marrying. While the policy may place increased economic burdens on certain city employees who wish to marry one another, the policy does not forbid them from marrying . . . . Any increased economic burden created by the anti-nepotism policy is no more than an incidental effect of a policy aimed at maintaining the operational efficiency of Warner Robins' governmental departments, not a direct attempt to control the marital decisions of city employees.
>
> Moreover, individual instances of hardship notwithstanding, the anti-nepotism policy at issue here does not make marriage practically impossible for a particular class of persons. Although [the plaintiffs] have postponed their wedding for over four years, pending the outcome of this case, they have produced no evidence of other couples similarly deterred by the policy, nor do we believe that ordinarily such will be the case. As the Supreme Court noted in [Califano v. Jobst, 434 U.S. 47, 54 (1977)], a statute is not rendered invalid simply because some persons who might otherwise have married were deterred by the rule or because some who did marry were burdened thereby.

9

> Because the Warner Robins policy does not directly and substantially interfere with the fundamental right to marry, we subject the policy to rational basis scrutiny.

Parks, 43 F.3d at 614 (internal quotation marks and additional citations omitted).

Applying Waters and the decisions cited favorably therein, the court agrees with the defendants that the Norton City Schools' anti-nepotism policy does not directly and substantially interfere with the right to marry. The Policy does not forbid marriage altogether, as in Loving, or forbid marriage without the permission of the state, as in Zablocki. "At most," the Policy "is an unwelcome hurdle," forcing one spouse to attempt to transfer to another school or department within the school system, or to leave the school system's employ altogether. Waters, 57 F.3d at 426. Because the Policy does not significantly interfere with the right of marriage, it is not subject to strict scrutiny analysis. Instead, the court must review the Policy to determine whether there was a rational basis for its passage. Id.

In an attempt to avoid the application of the rational basis standard, Baker argues that the Policy was selectively enforced by the school system, and that its selective enforcement warrants the application of strict scrutiny analysis. However, Baker cites no authority to support this argument, and the court agrees with the defendants that it conflates principles of substantive due process with those of equal protection.[5] In the context of substantive due process, as the Fourth Circuit emphasized in Waters, courts "should apply strict scrutiny only to regulations that 'significantly interfere' with the right to marry." Waters, 57 F.3d at 425 (emphasis added) (quoting Zablocki, 434 U.S. at 388); see also Montgomery v. Carr, 101 F.3d 1117, 1124 (6th Cir. 1996) ("In the substantive due process context, Zablocki holds that determining the appropriate

---

[5] Baker does not assert an equal protection claim in his first amended complaint. Even if his allegations of selective enforcement could be construed to raise such claim, the court concludes, for the reasons stated below, that such claim would not survive the defendants' Rule 12(b)(6) motion.

10

level of scrutiny to apply to governmental action alleged to infringe the right of marriage requires a two-step analysis: first, a court must ask whether the policy or action is a direct or substantial interference with the right of marriage; second, if the policy or action is a direct and substantial interference with the right of marriage, apply strict scrutiny, otherwise apply rational basis scrutiny."); Wolford v. Angelone, 38 F. Supp. 2d 452, 462 (W.D. Va. 1999) (holding that the Virginia Department of Corrections' anti-fraternization regulation was "not subject to heightened scrutiny"). Because the Policy in this case does not significantly interfere with the right to marry, the court is convinced that rational basis scrutiny is appropriate.

Applying this standard of review, the court has no misgivings in concluding that the Policy passes muster. As the Fourth Circuit emphasized in Waters, such regulations on the employment of spouses or other family members "effectuate rational and laudable workplace goals," such as "avoiding conflicts of interest between work-related and family-related obligations; reducing favoritism or even the appearance of favoritism; preventing family conflicts from affecting the workplace; and, by limiting inter-office dating, decreasing the likelihood of sexual harassment in the workplace." Waters, 57 F.3d at 426 (internal citation and quotation marks omitted). For these reasons, the court concludes that the Policy is rationally related to a legitimate governmental interest and, thus, that its enforcement did not violate Baker's fundamental right to marry.

In response to the defendants' motion, Baker emphasizes that he was transferred to the Central Office even though he decided not to marry his subordinate employee, and that "[t]here is no policy which prohibits a supervisor from dating a subordinate." (Pl.'s Br. in Opp'n at 6). As the defendants note in their reply brief, however, Baker cites no authority to support the

proposition that the "liberty right to marry," on which Count II is partially premised, extends to dating relationships. (1st Am. Compl. at ¶30). Even if such relationships constitute a type of association entitled to some other form of constitutional protection, "the same [principles have] been applied to relationships less formal than marriage." Beecham v. Henderson Cnty., 422 F.3d 372, 377 (6th Cir. 2005). Thus, it is "inconsequential" that [the plaintiff's] intimate association . . . was not formalized by marriage" at the time he was transferred to the Central Office. Id. (holding that the plaintiff's claim arising from the termination of her employment as a result of her romantic relationship could not prevail upon the application of rational basis review). Simply stated, the same concerns that provide valid grounds for anti-nepotism policies are present when a supervisor dates his subordinate employee.[6] See Anderson v. City of LaVergne, 371 F.3d 879, 882 (6th Cir. 2004) (holding that a police force policy prohibiting dating between officers of different ranks did not directly and substantially burden the right to intimate association, and that it was rationally related to a legitimate government interest).

Accordingly, to the extent Baker alleges that the defendants violated his right to marry or some other associational interest by transferring him to the Central Office, the court concludes that he has failed to state a claim upon which relief may be granted.

---

[6] The court notes that it is also "of no consequence that there was no official policy" prohibiting Baker's dating relationship with his subordinate employee. Beecham, 422 F.3d at 377; see also Montgomery, 101 F.3d at 1127 (emphasizing that "[s]tate officials acting without the authority of any general policy should not necessarily be barred from deciding in an isolated case to transfer one of two co-worker spouses because that official believes that the couple's marriage is interfering with legitimate governmental objectives").

12

### ii. Right to Engage in the Occupation of His Choice

Baker also alleges that the defendants deprived him of his "liberty right to engage in the profession of [his] choosing," by taking away his desired position of principal and reassigning him to a Central Office position.[7] (1st Am. Compl. at ¶ 31). For the following reasons, the court concludes that this claim is also subject to dismissal.

The liberty interests protected by the Fourteenth Amendment include the freedom "to engage in any of the common occupations of life." Roth, 408 U.S. at 572. This right, however, is not so broad as to protect an individual's right to a particular job. Instead, "[i]t is the liberty to pursue a particular calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment." Piecknick v. Pennsylvania, 36 F.3d 1250, 1259-1260 (3d Cir. 1994) (internal citation and quotation marks omitted); see also Habhab v. Hon, 536 F.3d 963, 968 (8th Cir. 2008) (quoting Piecknick and holding that the plaintiff had not been deprived of any liberty interest); Ulichny v. Merton Cmty. Sch. Dist., 249 F.3d 686, 704 (7th Cir. 2001) ("The due process clause of the Fourteenth Amendment secures the liberty to pursue a calling or occupation, and not the right to a specific job."). As the Supreme Court emphasized in Roth, "[i]t stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." Roth, 408 U.S. at 575.

---

[7] The defendants construed the plaintiff's first amended complaint to assert a liberty interest claim based on the allegedly unpleasant work conditions that the plaintiff experienced following his transfer to the Central Office. The plaintiff confirmed during the motions hearing, however, that he was not attempting to assert such claim.

Likewise, the plaintiff withdrew his liberty interest claim that was based on allegedly defamatory statements made by defendant Harris. See Pl.'s Br. in Opp'n at page 9. Thus, it is unnecessary for the court to consider whether the plaintiff's allegations are sufficient to state the type of liberty interest claim discussed in cases such as Sciolino v. City of Newport News, 480 F.3d 642 (4th. Cir. 2007).

In this case, Baker does not claim that he has lost the ability to pursue a career in education as a result of the defendants' actions, or that the defendants' actions have had any effect on his ability to obtain a position in another school system. Rather, Baker alleges only that the defendants "deprived [him] of his liberty right to engage in the profession of [his] choosing, principal," by reassigning him to the Central Office and ultimately terminating his employment. As the foregoing decisions make clear, such allegations fall short of demonstrating that the defendants' actions implicated a cognizable liberty interest. Accordingly, the court must grant the defendants' motion with respect this claim.

### 2. First Amendment Claim

In Count III of the first amended complaint, Baker asserts a First Amendment retaliation claim. Specifically, Baker alleges that the defendants violated his right to free speech by "demoting and reassigning [him] for simply speaking that he intended to marry Phillips." (1st Am. Compl. at ¶ 34).

The Supreme Court "has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). Indeed, "[t]he Supreme Court's decision in Pickering v. Board of Educ., 391 U.S. 563 (1968), and cases following, established that a state government employer violates the Constitution if it deprives an employee of a valuable employment benefit in retaliation for the employee's exercise of his constitutionally protected speech." DiMeglio v. Haines, 45 F.3d 790, 804 (4th Cir. 1995). In order to establish a violation of the First Amendment, however, a public employee must satisfy the following three elements:

> First, the public employee must have spoken as a citizen, not as an employee, on a matter of public concern. Second, the employee's interest

14

>in the expression at issue must have outweighed the employer's interest in providing effective and efficient services to the public. Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action.

Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006) (internal citations and quotation marks omitted).

To determine whether Baker's speech is constitutionally protected, the court must first decide, as a threshold matter, whether the plaintiff spoke as a citizen on a matter of public concern. This determination "is a question of law for the court," which "should be made by examining the 'content, form and context of a given statement, as revealed by the record as a whole.'" Holland v. Rimmer, 25 F.3d 1251, 1255 (4th Cir. 1994) (quoting Connick v. Myers, 461 U.S. 138, 147-148 (1983)). "Because almost anything that occurs within a public agency could be a concern to the public," the court's inquiry must "not focus on the inherent interest of importance of the matters discussed by the employee," but on "whether the speech at issue . . . was made primarily in the plaintiff's role as a citizen or primarily in his role as employee." DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995) (emphasis in original) (quoting Terrell v. Univ. of Texas Sys. Police, 792 F.2d 1360, 1362 (5th Cir. 1986)); see also Urofsky v. Gilmore, 216 F.3d 401, 407 (4th Cir. 2000) (emphasizing that "critical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is made primarily in the [employee's] role as citizen or primarily in his role as employee") (internal citation and quotation marks omitted).

When an employee's speech pertains to a matter of personal interest, the First Amendment offers no protection. Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992). As the Fourth Circuit explained in Stroman, "[p]ersonal grievances, complaints

about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment, but are matters more immediately concerned with the self-interest of the speaker as employee." Id. (citing Connick, 461 U.S. at 147).

Applying these principles, the court concludes that it is clear from Baker's allegations that the speech at issue was not made as a citizen upon a matter of public concern. Baker's First Amendment claim is based on a conversation with Superintendent Comer, during which Baker expressed his intent to marry Catherine Phillips. As the defendants emphasize, this was clearly a private discussion between an employee and his supervisor regarding the employee's own personal dating relationship and his intentions with respect to that relationship. Even if the subject of the conversation would arouse interest in the small town of Norton, "the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." DiMeglio, 45 F.3d at 805. Instead, as previously stated, the critical determination is "whether the speech at issue . . . was made primarily in the plaintiff's role as citizen or primarily in [his] role as employee." Id. In this case, the content, form, and context of the conversation alleged in the first amended complaint establish that Baker's speech was made as an employee to his supervisor on a matter of personal interest, rather than as a citizen speaking out about matters of public concern. Accordingly, Baker's First Amendment claim must be dismissed.

### 3. Equal Protection Claim

Baker's first amended complaint does not include an equal protection claim. Even if his allegations that the defendants selectively enforced the Policy could be construed to assert such

claim, it would nonetheless be subject to dismissal. It is well established that "selective enforcement of a facially constitutional regulation does not, by itself, violate equal protection." Wolford, 38 F. Supp. 2d at 462 n.4. Instead, to successfully plead an equal protection claim, a plaintiff must allege that he was treated differently from another similarly situated individual, and "that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999).

In light of these required elements, the court agrees with the defendants that the allegations in Baker's first amended complaint are insufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; see also Waters, 57 F.3d at 427 (rejecting a selective enforcement challenge to an anti-nepotism policy); Wolford, 38 F. Supp. 2d at 462 n.4 (same). To be sure, Baker has suggested that the defendants' actions were arbitrary and unfair. "However, even taking these allegations as true, there is no allegation that the actions – as arbitrary or irrational as they may have been – were motivated by a constitutionally impermissible consideration."[8] Payne v. Huntington Union Free Sch. Dist., 101 F. Supp. 2d 116, 119 (E.D. N.Y. 2000). Because "[t]he 'key issue' in an equal protection claim alleging selective enforcement is impermissible motive," the court is convinced that Baker's allegations are

---

[8] To the extent Baker alleges, in paragraph 29 of his complaint, that the defendants "discriminated against him for voicing his desire to marry," the court agrees with the defendants that such argument is derivative of his First Amendment claim and does not give rise to a separate theory of recovery. See, e.g., Edwards v. City of Goldsboro, 178 F.3d 231, 250 (4th Cir. 1999) (affirming the dismissal of the plaintiff's equal protection claim, since it was "best characterized as a mere rewording of his First Amendment retaliation claim"); Heusser v. Hale, 777 F. Supp. 2d 366, 385 (D. Conn. 2011) ("The Second Circuit has held that where a selective enforcement claim is found to 'coalesce' with a legally insufficient First Amendment retaliation claim, the Equal Protection claim must also fail as a matter of law.") (citing Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir. 2003)).

17

insufficient to withstand the defendants' motion to dismiss. Id. (internal citation and quotation marks omitted).

### B.    State Law Defamation Claim

In addition to his constitutional claims under § 1983, Baker asserts a state law claim of defamation against defendant Harris. Having determined that Baker's federal claims are subject to dismissal under Rule 12(b)(6), the court declines to exercise jurisdiction over the defamation claim. See 28 U.S.C. § 1367. Accordingly, such claim will be dismissed without prejudice.

## II.    Motion to Amend

Baker previously moved for leave to file a second amended complaint, "for the sole purpose of including [the allegedly defamatory] language" used by defendant Harris. (Pl.'s Mot. to Amend at 1). Because the court has declined to exercise jurisdiction over the defamation claim, Baker's motion to amend will be dismissed as moot.

### Conclusion

For the reasons stated, the court will grant the defendant's motion to dismiss. In reaching this decision, the court is not unsympathetic to Baker's predicament, and has no reason to doubt Baker's assertion that his performance with the Norton City Schools was excellent. Nonetheless, the court is constrained to conclude, for the reasons set forth above, that the allegations in Baker's first amended complaint are insufficient to state a claim of constitutional proportions. Accordingly, the court must grant the defendants' motion with respect to Baker's claims under § 1983. Additionally, his defamation claim under state law will be dismissed without prejudice and his motion to amend the defamation claim will be dismissed as moot.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 6th day of February, 2012.

/s/ Glen Conrad
Chief United States District Judge